UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MUNA F. NUMAN,

                    Plaintiff,

         v.                                                    17-CV-1022
                                                               DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____


         On October 10, 2017, the plaintiff, Muna Numan, brought this action under the

Social Security Act ("the Act").  She seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that she was not disabled.  Docket

Item 1.  On January 28, 2019, Numan moved for judgment on the pleadings, Docket

Item 16; on March 29, 2019, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 20; and on June 3, 2019, Numan replied,

Docket Item 24.

         For the reasons stated below, this Court grants Numan's motion in part and

denies the Commissioner's cross-motion.

## BACKGROUND

### I.     PROCEDURAL HISTORY

On September 30, 2013, Numan applied for Supplemental Security Income benefits.  Docket Item 9 at 40.  She claimed that she had been disabled since August 4, 2012, due to back injuries from a car accident.  *Id.*

On January 21, 2014, Numan received notice that her application was denied because she was not disabled under the Act.  *Id.* at 114.  She requested a hearing before an administrative law judge ("ALJ"), *id.* at 158, which was held on March 4, 2016, *id.* at 40.  The ALJ then issued a decision on March 17, 2016, confirming the finding that Numan was not disabled.  *Id.* at 55.  Numan appealed the ALJ's decision, but her appeal was denied, and the decision then became final.  *Id.* at 5.

### II.    THE ALJ'S DECISION

In denying Numan's application, the ALJ evaluated Numan's claim under the Social Security Administration's five-step evaluation process for disability determinations.  *See* 20 C.F.R. § 404.1520.  At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one the ALJ determined that Numan had not engaged in substantial gainful activity since her alleged disability onset date. Docket Item 9 at 42. At step two,

the ALJ found that Numan had two severe impairments: discogenic lumbar spine and lumbar radiculopathy. *Id.* at 43. At step three, the ALJ determined that those impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 44. At step four, the ALJ reached the following RFC:

> [t]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she has occasional limitations in bending, climbing, stooping, squatting and crawling and in pushing/pulling with the upper extremities. Lastly, she cannot have exposure to extreme cold or dampness.

*Id.* at 45. At step five, the ALJ found that Numan is capable of performing a significant number of jobs in the national economy, such as small products assembler or labeler.

## LEGAL STANDARDS

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a

reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Numan objects to the ALJ's RFC determination. Docket Item 16-1. She specifically argues that the ALJ erred by failing to develop the record despite evidence of an apparent inconsistency in medical records. *Id.* at 13. She also argues that the ALJ improperly substituted her lay opinion for the opinion of any physician regarding Numan's physical limitations. *Id.* at 23. This Court finds that remand is required because the ALJ failed to meet her duty to develop the record in light of the apparent inconsistency in the medical records.

### II. ANALYSIS

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000). With respect to a claimant's RFC, the ALJ fulfills the "'responsibility' of 'assessing [a claimant's] residual functional capacity' by reviewing 'all the relevant evidence.'" *Dougherty-Noteboom v. Berryhill*, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018) (quoting relevant regulations). In weighing the evidence, the ALJ must make specific findings and "conduct a distinct analysis that would permit adequate review on appeal." *Aung Winn*

*v. Colvin*, 541 Fed. Appx. 67, 70 (2d Cir. 2013) (quoting *Kohler v. Astrue*, 546 F.3d 260 (2d Cir. 2008)) (summary order).

"Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history."  *Rosa*, 168 F.3d at 79; *see also Tumpower v. Colvin*, 2015 WL 162991, at *14 (W.D.N.Y. Jan. 13, 2015) (remanding "where the ALJ rejected Dr. Newman's opinion in large part because . . . it was incomplete"; therefore "the ALJ had a duty to develop the record by re-contacting Dr. Newman for clarification regarding [the] foundation for [the] opinion.") (citations omitted); *Mecklenburg v. Astrue*, 2009 WL 4042939, at *6 (W.D.N.Y. 2009) (when doctor "opined that the plaintiff was totally disabled [but] the ALJ stated that [the treating physician] did not identify specific and objective clinical findings that supported his finding of disability," the ALJ had a duty to develop the record) (quotations of the administrative record omitted).

Here, the record included inconsistent MRI records: the early MRIs of Numan's lumbar spine evidenced more positive findings than her most recent one.  An MRI taken on April 22, 2009, for example, revealed "annular tears and small posterior disc herniations/protrusions which mildly efface the thecal sac" at the L4-5 and L5-S1 levels. *Id.* at 248.  An MRI on February 26, 2013, revealed "[a]dvanced disc degeneration with disc height loss" at both the L4-L5 and L5-S1 levels.  *Id.* at 294.  That February 2013 MRI report also noted "a broad-based left paracentral disc protrusion[,] . . . posterior displacement of the traversing left S1 root[,] . . . [and that the] L5 root ha[d] exited the neural foramen above the level of the disc protrusion."  *Id.*  With respect to the L4-L5 level, the report noted "3 mm of retrolisthesis L4 with respect to L5[, d]iscogenic marrow

signal alteration[,] . . . broad based midline disc protrusion[,] . . . mild encroachment on the ventral aspect of the thecal sac[, and] . . . mild encroachment on the caliber of the neural foramina for the L4 roots bilaterally." *Id.* But the only positive finding in the January 30, 2016 MRI—the most recent one before the hearing—was "[s]ubtle early disc desiccation at L4-L5 and L5-S1."[1] *Id.* at 539.

The ALJ interpreted the most recent MRI report as indicating "interval improvement." *Id.* at 44. But at the hearing, Numan and her attorney told the ALJ that her primary care physician, Ghous Yasin, M.D., doubted the accuracy of this most recent MRI. For example, Numan's attorney told the ALJ that "[Numan's] doctor, actually advised her to have [the January 2016 MRI] redone because she thought—or the doctor that that that [sic] was an incorrect reading." Docket Item 9 at 65. In her hearing testimony, Numan reported that "last week, Friday," her doctor said that her "MRI result doesn't appear to me that they were read right because of your previous MRI. He did suggest for me to go see a back specialist to go over the MRI results." *Id.* at 80.

The ALJ rejected Numan's testimony about her doctor's lack of confidence in her most recent MRI as "hearsay" that did "not qualify as objective evidence that the January 30, 2016 MRI was erroneous." *Id.* at 44. Instead, the ALJ credited the January 30, 2016 MRI, finding that the "evidence regarding the compromise of a nerve root or spinal cord [was] equivocal . . . given the minimal findings in the most recent lumbar spine MRI." *Id.*

---

[1] The radiologist did not review any prior MRI studies when reviewing this MRI. *See* Docket Item 9 at 539 ("COMPARISONS: None").

Numan's testimony included hearsay, but the "strict rules of evidence, applicable in the courtroom, are not to operate at social security hearings." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 449 (2d Cir. 2012) (quoting *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971) (internal alterations omitted). In this regard, the "ALJ's credibility findings 'must be set forth with sufficient specificity to permit intelligible plenary review of the record.'" *Bowen v. Berryhill*, 2017 WL 1159729, at *3 (W.D.N.Y. Mar. 29, 2017) (quoting *Phelps v. Colvin*, 20 F. Supp. 3d 392, 403 (W.D.N.Y. 2014)). Discounting testimony that Numan's primary care physician doubted her recent MRI results—which may well have been probative evidence for the ALJ's inquiry—simply because it was hearsay does not permit intelligible review of whether the ALJ based her decision on substantial evidence.

What is more, the January 30, 2016 MRI showed substantially fewer symptoms than the other MRIs in the record, *compare* Docket Item 9 at 539 *with id.* at 248, 294, but there was nothing in the record explaining why. Despite Numan's testimony about Dr. Yasin's reaction, the ALJ surmised that the latest MRI evidenced "improvement," *id.* at 44, 46—a lay interpretation not based on medical evidence. At the very least, the combination of this inconsistency and Numan's testimony required the ALJ to follow up with Dr. Yasin—or some other treating source or medical provider—rather than assume that the report accurately indicated that Numan's condition had improved. *See McBrayer v. Sec'y. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."); *Fuller v. Astrue*, 2010 WL 3516935, at *5 (W.D.N.Y. Sep. 7, 2010) ("[A]n ALJ is not free to substitute his own lay opinion for opinions from treating sources.").

The ALJ's failure to recontact Dr. Yasin is especially problematic because the ALJ gave "limited persuasive weight" to Dr. Yasin's opinion—less than a month after the January 2016 MRI—that Yasin had significant physical limitations. Docket Item 9 at 51. The ALJ found that Numan could perform light work, which "requires a good deal of walking or standing." 20 C.F.R. § 416.967(b). But on February 22, 2016, Dr. Yasin opined that Numan could stand or walk for less than two hours per day. *Id.* at 556. Dr. Yasin's opinion was consistent with Numan's testimony that the January 2016 MRI report might not be accurate, another reason why the ALJ was required to recontact Dr. Yasin or another medical source about the accuracy of that MRI report.

In sum, the inconsistency in the records—especially coupled with Numan's testimony about her treating source's doubts regarding the latest MRI—triggered the ALJ's duty to develop the record. It was incumbent on the ALJ to contact Dr. Yasin or another source before relying on the January 30, 2016 MRI as conclusive evidence that Numan's condition had improved. The matter therefore is remanded for the ALJ to recontact Dr. Yasin or another physician regarding the apparent inconsistency between the January 30, 2016 MRI and Numan's earlier MRI reports and whether the most recent MRI was accurate evidence that Numan's condition had improved.[2]

---

[2] Because the "remaining issues ... may be affected by the ALJ's treatment of this case on remand," this Court does not reach them. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 20, is DENIED, and Numan's motion for judgment on the pleadings, Docket Item 16, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:      June 28, 2019
              Buffalo, New York


*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE